UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 09-30079-RAL |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | OPINION AND ORDER |
| | * | DENYING MOTION |
| SHANA SCHMIDT, | * | FOR NEW TRIAL |
| | * | |
| Defendant. | * | |

Following a jury trial on July 7, 8, and 9, 2010, Defendant Shana Schmidt was found guilty of assault with a dangerous weapon and assault resulting in serious bodily injury. On July 27, 2010, Schmidt filed a Motion for New Trial (Doc. 84), claiming that her constitutional rights to due process and a fair and impartial jury trial were violated because of the involvement of juror C.W.[1] in deliberations. For the reasons explained below, Defendant's Motion for New Trial is denied.

**I. Facts Pertinent to Motion for New Trial**

A Grand Jury indicted Defendant Shana Schmidt for assault with a dangerous weapon and assault resulting in serious bodily injury arising out of the stabbing of Brittany Shaw on July 11, 2009. This Court impaneled a thirteen person jury[2] and held a jury trial on the charges on July 7, 8, and 9, 2010. After the presentation of all evidence, closing arguments, and instruction of the jury, this Court excused the alternate juror, instructed the alternate juror

---

[1] The Court uses the initials of the juror in this opinion and order and has filed a separate opinion and order under seal referring to the juror by his full name.

[2] The practice of this Court in criminal jury trials is to seat 31 prospective jurors, conduct voir dire from the bench, and allow counsel for the Government and then Defendant to conduct further voir dire. Once all counsel have passed the jury for cause, the exercise of peremptory challenges results in 13 jurors being impaneled- with one as an alternate in case one juror cannot complete service on the jury.

not to discuss the case with anyone pending notification from the Clerk of Court that a verdict had been entered, and instructed the remaining twelve jurors to retire and deliberate.

During deliberation, the jury sent a note stating:

> Are we allowed to view the voluntary witness reports written directly after the incident?

(Doc. 70). The jury note was signed by two jurors, including C.W., as foreperson. Counsel for both the Government and Defendant, after meeting with the Court in chambers, stipulated and agreed on how the Court could respond to the jury note. (Doc. 71). As counsel were about to leave court chambers after having agreed on the appropriate response to the jury note, counsel for the Government told Defendant's counsel that a court security officer had questioned whether a convicted felon could be a juror and thought that juror C.W. might have had a prior state court conviction.

Later in the afternoon, the Court learned that the jury had reached a verdict and notified counsel for both the Government and Defendant. Defendant and her counsel were present in the courtroom when the jury came in to return its verdict. Upon inquiry from the Court, C.W. identified himself as the foreperson and reported that the verdict was unanimous. The Court then received the verdict form and published the jury verdict by reading it aloud in open court. (T. 3-4). The jury had found Defendant guilty of each of the two counts in the Indictment. (T. 4). The Court then asked whether the Defendant wanted the jury to be polled.

At that point, Defendant's counsel requested a sidebar. (T. 4). At sidebar, Defendant's counsel presented to the Court a printout indicating that C.W. had felony convictions in 1992 in state court involving fraud and false statements. (T. 5). The Court then advised the jury that a unique issue had been raised, asked C.W. to come into chambers, and sent the eleven other jurors back to the jury room. (T. 8-9).

The Court discussed separately with counsel the option of calling the alternate juror back and instructing the jury to begin deliberations anew without C.W.. (T. 17). Defendant's counsel objected to that option. (T. 17-18).

With counsel for both the Government and Defendant present, the Court had the Clerk of Court swear in C.W. and questioned him on two separate occasions. (T.10, 13-26). During the first questioning session, C.W. acknowledged the existence of the convictions, but explained that he had approached a state court judge after learning that he was ineligible to vote, that he later became eligible to vote, and that he understood his civil rights to have been restored. (T. 13-15). Following these statements by C.W., the Court asked counsel for both the Government and Defendant if there were "any other questions that either counsel would like for me to ask of [C.W.]?" (T. 14). The Court allowed counsel for both sides to pose questions for C.W. to the Court, which the Court would in turn ask C.W.. (T. 14-17).

After this questioning period, the Court asked C.W. to wait while the Court attempted to either verify or disprove that C.W. had been restored of his civil rights. (T.17). The Court obtained a copy of a certificate of discharge from a state agency, reflecting that Mr. C.W. indeed had been restored of his civil rights. (Doc. 72, Exhibit C).

The Court then questioned C.W. a second time, with counsel for both the Government and Defendant present. C.W. recognized the document restoring him to his civil rights. (T. 25). The Court asked C.W. about his answer to the Juror Qualification Questionnaire, on which C.W. had answered "no" to the following question:

> 6. Have you ever been convicted, either by your guilty or nolo contendere plea or by a court or jury trial, of a state or federal crime for which punishment could have been more than one year in prison?

(Doc. 72, at Exhibit A). C.W.'s answers were to the effect that his sentence was less than one year and that he read the question in a manner where he thought the correct answer for him

3

was "no." (T. 25-26). C.W. also had answered "no" to the next question which stated, "7. (If "yes"), were your civil rights restored?" (Doc. 72 at Exhibit A). Having observed C.W. during the two questioning sessions, the Court made the finding that C.W. was credible and had answered the questions of the Court in an honest manner. (T. 27). The Court again raised with Defendant's counsel the option of excusing C.W., bringing back the alternate juror, and instructing the jury to begin deliberations anew. Defendant's counsel again objected to bringing the alternate juror back in place of C.W.. (T. 35).

The Court observed that Defendant's counsel had in hand information about C.W.'s conviction before the jury verdict was read. (T. 32). After all, Defendant's counsel was able to present the document reflecting Mr. C.W.'s felony convictions at sidebar immediately after the Court published the verdict form. (T. 4). Defendant's counsel argued that Defendant had not waived the issue by waiting to raise it until after the verdict had been read, and further argued that a mistrial should be granted. (T. 31, 34). The Court found that, despite his felony conviction, C.W. had been restored of his civil rights and thus was a qualified juror. (T. 34-35).

The Court then reconvened in the courtroom with Defendant and counsel for both parties present. The Court had all twelve jurors brought back into the courtroom and read the verdict form anew. Defendant's counsel asked that the jury be polled, which confirmed that the verdict was unanimous.

Defendant's Motion for a New Trial does not challenge C.W.'s qualification to serve as a juror, but rather focuses on the incorrect answer to Question 6 of the Juror Qualification Questionnaire. Defendant asserts that, as a result, there was a "total lack of ability of the Defendant and government to adequately voir dire the particular juror in question because

4

false information was provided at the inception." (Doc. 85 at P.2). Defendant asks for an evidentiary hearing for further questioning of C.W., as well as seeking testimony from the Clerk of Court or his deputy. Defendant argues that her Fifth and Sixth Amendment rights were violated.

**II. Discussion**

"As a general rule, the decision whether to grant or deny a motion for a new trial lies within the discretion of the district court." United States v. McMahan, 744 F.2d 647, 652 (8th Cir. 1984) (citing McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984)). Federal Rule of Criminal Procedure 33(a), allows a district court to grant a new trial "if the interests of justice so requires." Fed. R. Crim. P. 33(a). Such authority, however, "should be exercised sparingly and with caution." United States v. Cole, 537 F.3d 923, 926 (8th Cir. 2008) (citations omitted).

**A. C.W. was a qualified juror.**

28 U.S.C. § 1865(b) disqualifies from jury service a person who "has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year *and* his civil rights have not been restored." 28 U.S.C. § 1865(b)(5) (emphasis added). Here, C.W. was convicted of two state felonies in 1992. In 1995, however, his civil rights were restored thus making him qualified to sit as a juror. (Doc. 72, Exhibit C). Because C.W.'s civil rights have been restored, he is also qualified to sit as a juror under South Dakota law. S.D. Codified Laws ("SDCL") § 16-13-10 (2004) ("Any person who has been convicted of a felony unless restored to civil rights is not eligible to serve as a juror.").

Even in the event that C.W.'s civil rights had not been restored, Defendant Schmidt is not necessarily entitled to a new trial. The "[f]ailure to have one of the juror qualifications set forth at 28 U.S.C. § 1865(b) should not necessarily render an individual fundamentally unfit to serve." United States v. Humphreys, 982 F.2d 254, 261 (8th Cir. 1992). In Humphreys, a juror admitted during voir dire that he had been convicted of embezzlement thirty-one years earlier. Id. at 260. The juror professed the mistaken belief that his civil rights had been restored and thereafter served on the jury. Id. Following the return of a verdict of guilty, the defendant learned that the juror's civil rights had not been restored, and brought a motion for a new trial. Id. at 261. In determining that the district court properly denied the defendant's motion for a new trial, the United States Court of Appeals for the Eighth Circuit expressed its agreement with a District of Columbia Circuit Court of Appeals case holding that:

> The Sixth Amendment right to an impartial jury does not require an absolute bar on felon-jurors. The touchstone of the guarantee of an impartial jury is protection against juror bias. A per se rule would be appropriate only if one could reasonably conclude that felons are always biased against one party or another.

Id. (quoting United States v. Boney, 977 F.2d 624 (D.C. Cir. 1992)); see also Coughlin v. Tailhook Ass'n, 112 F.3d 1052, 1058-59 (9th Cir. 1997) (citing Humphreys with approval and stating that "the participation of a felon-juror is not an automatic basis for a new trial."). The Eighth Circuit explained that in situations similar to those present in Humphreys, "it is incumbent upon the defendant to clearly demonstrate that the juror's lack of qualifications presented actual bias or prejudice, affecting the juror's impartiality and impacting the fairness of the trial." Humphreys, 982 F.2d at 261.

C.W.'s civil rights had been restored. However, even if they had not been restored, Defendant has no basis to assert that C.W.'s prior felony convictions in state court for conduct

6

unrelated to the charges against Defendant Schmidt resulted in actual bias or prejudice impacting the fairness of Defendant Schmidt's trial. None of C.W.'s answers to questions posed to him during the two separate questioning periods indicated that he harbored any bias or prejudice toC.W. either party in the case.

**B. C.W.'s incorrect answer to Question 6 does not result in a violation of Schmidt's constitutional rights.**

Defendant claims that C.W.'s incorrect answer to Question 6 of the Juror Qualification Questionnaire caused a violation of her Sixth Amendment right to an impartial jury and her Fifth Amendment right to due process. (Doc. 85 at 2). In order to succeed on a concealed bias claim such as this, Defendant Schmidt must prove that: 1) C.W. answered Question 6 dishonestly, not just inaccurately; 2) that C.W. was motivated by partiality; and 3) that the true facts, if known, would have supported striking C.W. for cause.[3] United States v. Tucker, 137 F.3d 1016, 1026 (8th Cir. 1998) (citing McDonough, 464 U.S. at 556); see also United States v. Ruiz, 446 F.3d 762, 770 (8th Cir. 2006) (applying the three-part test when considering a juror bias claim).

Defendant cannot meet the first prong of showing that C.W. answered Question 6 dishonestly rather than just inaccurately. As this Court already has found based upon C.W.'s statements and observing C.W. during the questioning sessions, C.W. made an "innocent mistake" in his failure to answer Question 6 correctly. (T. 35). Rather than understanding Question 6 as asking him whether his convictions could have resulted in a sentence of longer

---

[3] The Court is aware of the fact that in Cannon v. Lockhart, 850 F.2d 437, 440 (8th Cir. 1988) the Eighth Circuit stated that "[i]t would thus appear that a juror's dishonesty is not a predicate to obtaining a new trial. The focus is on bias." Id. This does not affect the Court's decision, however, as Defendant has failed to show any bias or partiality on the part of C.W..

7

than one year, C.W. mistakenly believed he was being asked whether he actually had been sentenced to more than a year in prison. (T. 25-26). As the United States Supreme Court noted in McDonough, "jurors are not necessarily experts in English usage. Called as they are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." McDonough, 464 U.S. at 555. The fact that C.W. mistakenly answered Question 6 is not sufficient justification for ordering a new trial. See McMahan, 744 F.2d at 652 (holding that it was not an abuse of discretion to deny defendant's motion for a new trial where juror honestly but mistakenly answered a voir dire question concerning his place of residence). Finally, C.W.'s candor during questioning by the Court further evidences the honesty of his mistake.

Defendant also has not met the second prong of the test laid out in Tucker, because she is unable to show that C.W. was motivated by impartiality. Tucker, 137 F.3d at 1026. As was previously noted, none of C.W.'s answers to questions posed to him by the Court or counsel revealed evidence of partiality. C.W.'s convictions were for offenses entirely unrelated to Defendant's offenses of conviction. The mere fact that he made a mistake in answering Question 6 is not alone sufficient to show partiality.

Finally, Defendant has not satisfied the final prong of the Tucker test. Even if Defendant's counsel had known that C.W. had been convicted of a felony, she could not have necessarily struck him for cause because C.W.'s rights had been restored to him, thus rendering him a qualified juror. See 28 U.S.C. § 1865(b)(5); SDCL 16-13-10. While Defendant's counsel could have exercised a peremptory challenge against C.W., it is more likely that the Government would have exercised such a challenge. See United States v. Ross, 263 F.3d 844, 847 (8th Cir. 2001) ("[I]t seems to us that [a] juror's previous brushes with the law would

create a stronger opposite inference--one that she might well be biased in favor of [criminal] defendants in general.").

Defendant has requested an evidentiary hearing to examine C.W. further and to question the Clerk of Court about procedures followed when a potential juror discloses a past felony conviction. An evidentiary hearing is unnecessary in this case because such a hearing already took place. This Court questioned C.W. on two separate occasions with counsel from both sides present and invited to pose further questions to C.W.. Indeed, the Court specifically asked whether there were "any other questions that either counsel would like for me to ask of [C.W.]?" (T. 14). Counsel for both the Government and Defendant asked C.W. a number of questions. (T. 14-17). None of these questions exposed any evidence of bias on the part of C.W.. Defendant Schmidt already has had the benefit of a prior hearing in chambers involving two separate periods of questioning C.W., and Defendant has made no showing of bias. Defendant has not justified having another hearing. See United States v. Moses, 15 F.3d 774, 778 (8th Cir. 1994) ("Not every allegation . . . requires an evidentiary hearing."); United States v. Angulo, 4 F.3d 843, 847 (9th Cir. 1993) ("An evidentiary hearing is not mandated *every* time there is an allegation of jury misconduct or bias."); Lopez v. Aramark Uniform & Career Apparel, Inc., 417 F.Supp. 2d 1062, 1068 (N.D. Ia. 2006) ("[I]n order to be entitled to an evidentiary hearing, a claimant must make a sufficient showing of a McDonough-type irregularity sufficiently alleging facts" that establish the three-part test laid out in Tucker).

Defendant cited the Tucker case when requesting another hearing but that case involved a fact situation distinct from this one. In Tucker, the defendant filed a motion for a new trial after he learned that one of the jurors had failed to disclose during voir dire that she was marrying a former state prisoner to whom the defendant, as governor, had denied

9

clemency. The defendant's motion contained detailed factual allegations of the juror's relationship to the former prisoner, including an allegation that the juror in question had received extraneous evidence from a third party during trial. Tucker, 137 F.3d at 1023-25. The district court in Tucker conducted a hearing on the matter, but limited the scope of the hearing to the extraneous evidence issue and did not allow the defendant to put on evidence relating to the concealed juror bias claim. Id. at 1026. On appeal, the Eighth Circuit held that the defendant in Tucker made a sufficient showing to entitle him to a McDonough "concealed juror bias hearing" and remanded the case so that the district court could hold such a hearing. Id. at 1028.

In the instant case, the Court already had a hearing where it did not limit either counsel's questions of C.W.. Further, the Court made a specific factual finding that C.W. had made an honest mistake when answering Question 6. Finally, the answers C.W. gave during questioning by the Court and counsel showed no evidence of bias, and Defendant has posited none in her motion for a new trial.

Thus, Defendant has not made a sufficient showing to entitle her to *another* hearing pertaining to C.W.'s answers to Question 6. See id. at 1026. ("The district court has broad discretion in handling allegations that jurors have not answered voir dire questions honestly, and we defer to its discretion in deciding whether a post-trial hearing is necessary."). Furthermore, because the Court already has determined that C.W. was qualified to sit as a juror, testimony from the Clerk of Court about its procedures concerning felon-jurors would be irrelevant and unnecessary.

**C. Schmidt waived her challenge to C.W.'s qualifications.**

The Government argues that Defendant waived the right to challenge C.W.'s qualifications to sit as a juror by failing to raise the issue until after the Court read the jury's guilty verdict. A similar situation occurred in United States v. Nance, 502 F.2d 615 (8th Cir. 1974), where the defendant's counsel first learned of alleged juror misconduct during juror deliberations, but waited until after the verdict was read to raise the issue. Id. at 621. In holding that the defendant was barred from raising the issue of juror misconduct in his motion for a new trial, the Eighth Circuit stated that "[a] party may not stand idly by, watching the proceedings and allowing the court to commit error of which he subsequently complains." Id. (citations omitted); see also United States v. Bolinger, 837 F.2d 436 (11th Cir. 1988) (where defense counsel learned of alleged juror bias during jury deliberations and failed to inform the court until after the verdict was read, the Eleventh Circuit held that the defendant had waived this issue, and stated that "where the defendant or defense counsel knows of juror misconduct or bias before the verdict is returned but fails to share this knowledge with the court until after the verdict is announced, the misconduct may not be raised as a ground for a new trial."); United States v. Abcasis, 811 F.Supp. 828, 831 (E.D.N.Y. 1992) ("In this Circuit, the relevant case law indicates that if a defendant knows of an incident of juror misconduct prior to deliberations or even during deliberations, 'but nevertheless stands mute, gambling on an acquittal while holding the issue in reserve,' the defendant will be held to have waived any claim for a new trial based on the alleged misconduct.") (citations omitted).

Defendant's counsel learned of C.W.'s felony convictions during the jury's deliberations. Defendant's counsel obtained and had information regarding C.W.'s state court felony convictions in hand before the jury verdict initially was published in open court. Indeed, immediately after the Court read the verdict, Defendant's counsel presented the Court

11

with a document listing C.W.'s felony convictions. (T. 4). Thus, because Defendant was aware of C.W.'s felony convictions during the jury's deliberations, yet made the tactical decision to wait until after the verdict was read to raise the claim of C.W.'s qualifications, Defendant has waived the issue and would not be entitled to a new trial on that basis.

### III. Conclusion and Order

For the reasons explained above, it is hereby

ORDERED that Defendant's Motion for New Trial (Doc. 84) is denied.

Dated September 24, 2010.

BY THE COURT:

/s/ *Roberto A. Lange*
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE